UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

BANK OF AMERICA, N.A.,

                    Plaintiff,

              - against -

GREUNER MEDICAL P.C.; GREUNER MEDICAL
OF NJ PC; DGAT MANAGEMENT LIMITED
LIABILITY COMPANY; CENTER FOR SPECIAL
SURGERY OF ESSEX COUNTY, LLC; and DAVID
A. GREUNER,

                    Defendants.

---------------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 9620 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


     Bank of America, N.A. ("plaintiff") brings this action
against defendants Greuner Medical P.C. (the "borrower"), Greuner
Medical of NJ PC, DGAT Management Limited Liability Company, Center
for Special Surgery of Essex County, LLC, and David A. Greuner
(together, the "guarantors" and with borrower, the "defendants"),
alleging multiple claims related to a 2019 revolving line of credit
(referred to as an "LOC loan") and term loan between the plaintiff
and the borrower.  Pending before the Court is plaintiff's motion
for summary judgment on its claims for breach of contract, breach
of guaranty, and foreclosure of security interests.  For the
reasons set forth below, plaintiff's motion for summary judgment
is granted and its remaining claims are dismissed.

**BACKGROUND**

**A. Procedural Background**

On November 10, 2022, plaintiff filed this action against defendants.  See ECF No. 1.  Plaintiff alleged ten causes of action against defendants, specifically:  (1) breach of contract of an LOC loan; (2) breach of contract of a term loan; (3) foreclosure of security interests; (4) replevin; (5) conversion; (6) unjust enrichment; (7) breach of guaranty by Greuner Medical of NJ PC; (8) breach of guaranty by DGAT Management LLC; (9) breach of guaranty by Center for Special Surgery of Essex County LLC; and (10) breach of guaranty by David Greuner.  See ECF No. 14 ("Compl.").  On January 6, 2023, defendants filed an answer to plaintiff's complaint with ten affirmative defenses.[1]  See ECF No. 25 ("Answer").  On February 15, 2023, the Court held an initial pretrial conference at which the parties agreed that discovery was not needed and plaintiff would proceed to file a motion for summary judgment.  The Court granted plaintiff's request to file a motion for summary judgment during the pretrial conference.

---

[1] Defendant's answer includes the following affirmative defenses: (1) the complaint fails to state a claim upon which relief can be granted; (2) plaintiff's claims are barred by the doctrine of waiver and estoppel; (3) plaintiff's claims are barred by the doctrine of accord and satisfaction; (4) plaintiff's claims are barred by the doctrine of ratification and acquiescence; (5) plaintiff's claims are barred by bad faith and misconduct; (6) plaintiff's claims are barred by the doctrine of unclean hands; (7) plaintiff is estopped from asserting any right to relief because of their misconduct "which constitutes tortious conduct, waiver, and unclean hands"; (8) plaintiff does not plead an actual case or controversy; (9) any damages were wholly or partly caused by plaintiff's own conduct; and (10) a reservation of rights to raise other affirmative defenses. See Answer Affirmative Defenses ¶¶ 1-10.

Plaintiff filed its motion for summary judgment on May 24, 2023.  <u>See</u> ECF Nos. 31-37.  Defendants filed their opposition on June 23, 2023 after an extension of time was granted.  <u>See</u> ECF Nos. 38-41.  The motion was fully briefed on July 6, 2023.  <u>See</u> ECF Nos. 42-43.

**B. Local Rule 56.1 Statements**

Before providing the factual background, the Court is compelled to address defendants' failure to adhere to Local Rule 56.1(b).  Local Rule 56.1 requires that a party moving for summary judgment submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," Local R. 56.1(a), and for the party opposing summary judgment to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," Local R. 56.1(b). "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local R. 56.1(d).  These rules governing summary judgment "are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunting through voluminous records without guidance from the parties."  <u>N.Y. Teamsters Conference Pension &</u>

Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 649 (2d Cir. 2005)
(internal quotation marks omitted).

Despite opposing plaintiff's motion for summary judgment,
defendants have not submitted a Rule 56.1(b) Counter Statement.
Instead, defendants submitted a memorandum of law containing no
statement of facts and an accompanying declaration of Dr. David A.
Greuner, purporting to respond to the affidavit of Edmond T.
Giorgi, a Senior Vice President at Bank of America, filed in
support of plaintiff's motion. See ECF Nos. 40-41. Dr. Greuner's
declaration cannot be construed as a Rule 56.1(b) Counter Statement
because it fails to include any citations to the record, is replete
with conclusions, devoid of any material facts, and provides vague
responses cursorily denying most of the allegations in Mr. Giorgi's
affidavit. See ECF No. 41 (the "Greuner Decl."). For example, in
response to Mr. Giorgi's assertion that "[b]y letter dated
September 10, 2020 . . . the Bank notified the Obligors that an
additional event of Default had occurred . . .," ECF No. 34 (the
"Giorgi Affidavit") ¶ 28, Dr. Greuner claims that the statement is
"vague, ambiguous, materially incomplete and misleading," and
further alleges that the "Default Notice was materially defective
as it called for an incorrect payment amount that was not due and
owing," Greuner Decl. at 4. However, Dr. Greuner does not even
attempt to show how the notice was defective. Additionally, in an
attempt to dispute Mr. Giorgi's statement that, as of April 17,

2023, there was nearly $8 million due to plaintiff, Dr. Greuner claims that the statement is "vague, ambiguous, materially incomplete and misleading" and alleges that "[p]laintiff has not properly applied interest payments, is charging excessive interest and fees not permissible under the Contracts." Id. at 14. Yet, Dr. Greuner does not include any information to substantiate his allegations.

This is simply unacceptable. The declaration does not identify any fact in the record that refutes or challenges plaintiff's assertions. "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011) (citing cases); see also Feis v. United States, 394 F. App'x 797, 799–800 (2d Cir. 2010) (summary order).

The Court has "considerable discretion in fashioning a remedy to address" these failures. Emanuel v. Griffin, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015). "[W]here there are no citations or where cited materials do not support factual assertions in the [Rule 56.1 statements], the Court is free to disregard the assertion." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (quoting Watt V. N.Y. Botanical Garden, No. 98 Civ. 1095 (BSJ), 2000 WL 193626, at *1

n.1 (S.D.N.Y. Feb. 16, 2000)) (internal alterations omitted). Thus, the Court will not consider any unsupported alleged facts or assertions, and even if considered, will note the limitations of the evidence in the analysis below.

The Court is, however, mindful that "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and [that] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz, 258 F.3d at 74. As a consequence, rather than "streamlin[ing] the consideration of [the pending] summary judgment motions" as the local rule intended, id., the net effect of defendants' failure to submit a Local Rule 56.1 Counter Statement is to impose upon the Court the added burden of combing through the record to assure itself that the facts asserted by the moving party are supported by admissible evidence.

### C. Factual Background[2]

On August 26, 2019, plaintiff entered into a loan agreement with the borrower which provided for two loans, an $8 million one-year LOC loan and a $1.5 million five-year term loan.[3] See Pl.

---

[2] The following facts are derived from Plaintiff's Local Civil Rule 56.1 Statement (ECF No. 36, "Pl. 56.1"), the declaration of plaintiff's counsel Timothy R. Wheeler (and the documents attached thereto) (ECF No. 35, the "Wheeler Decl."), the Giorgi Affidavit, which are both based on personal knowledge and business records, and the Greuner Declaration.

[3] To summarize, the parties executed the following agreements: (1) an initial loan agreement between plaintiff and the borrower signed on August 26, 2019

56.1 ¶¶ 1-3; Wheeler Decl. Ex. A-1 at 1-2.  The borrower and DGAT Management LLC also provided plaintiff with security agreements. See Pl. 56.1 ¶¶ 8-9; Wheeler Decl. Ex. A-2, A-3.  The security agreements granted plaintiff a security interest in various collateral including, among other property "(a) [a]ll accounts, and all chattel paper, instruments, deposit accounts, letter of credit rights and general intangibles related thereto; and all returned or repossessed goods which, on sale or lease, resulted in an account[;] (b) all inventory[;] [and] (c) all equipment and fixtures now owned or hereafter acquired by the Pledgor."[4]  Wheeler Decl. Exs. A-2, A-3.  The loan agreement was amended four times, providing extensions to the maturity dates of the loans, among other provisions.  See Pl. 56.1 ¶¶ 22-25, 27.  When the loan was initially executed, Greuner Medical of NJ PC, David Greuner, and DGAT Management LLC also signed a Continuing and Unconditional Guaranty supporting the loan agreement.[5]  See Pl. 56.1 ¶ 13; Wheeler

---

that has four amendments, signed on October 28, 2020, February 23, 2023, September 30, 2021, and March 14, 2022 respectively, Wheeler Decl. Exs. A-1, A-11, A-12, A-14, and A-16; (2) four individual security agreements provided to plaintiff by the borrower, DGAT Management LLC, Greuner Medical of NJ PC, and Center for Special Surgery of Essex County LLC, Wheeler Decl. Exs. A-2, A-3, A-4, and A-5; and (3) two Continuing and Unconditional Guaranties, the first signed by Greuner Medical of NJ PC, DGAT Management LLC, and Dr. Greuner on August 26, 2019, Wheeler Decl. Ex. A-6, and the second signed by Center for Special Surgery of Essex County LLC on February 23, 2021, Wheeler Decl. Ex. A-7.

[4] The security agreements signed by the defendants contained identical language describing the collateral.  See Wheeler Decl. Exs. A-2, A-3, A-4, and A-5.

[5] As noted below, over the life of the loan, Greuner Medical of NJ PC and Center for Special Surgery of Essex County LLC also signed security agreements, with the latter providing an additional guaranty following the loan agreement's second amendment.  See Pl. 56.1 ¶¶ 10-11, 14; Wheeler Decl. Exs. A-4, A-5, A-7.

Decl. Ex. A-6.  Plaintiff filed UCC-1 Financing Statements with the Secretaries of State of New York and New Jersey shortly after the various security agreements were signed.  See Pl. 56.1 ¶ 39; Wheeler Decl. Ex. A-19.

The loan agreement contained events of default, including, as relevant here, (1) when the borrower failed to make a payment that became due or (2) when the borrower did not comply with a covenant in the agreement.  See Pl. 56.1 ¶¶ 4-5; Wheeler Decl. Ex. A-1 at §§ 10.1, 10.12.  In the event of a default, the lender was entitled to stop making additional credit available to the borrower, accelerate repayment of the entire debt immediately, and charge an interest rate of six percentage points higher than the rate provided in the agreement.  See Pl. 56.1 ¶ 6; Wheeler Decl. Ex. A-1 at §§ 5.7, 10.

Plaintiff notified the borrower and the guarantors that there were events of default several times over the course of the loans. First, on July 20, 2020, plaintiff notified the borrower that it had defaulted on two financial covenants, the debt to worth ratio and the basic fixed charge coverage ratio.  See Pl. 56.1 ¶¶ 18-19; Wheeler Decl. Ex. A-8.  Next, plaintiff demanded repayment when the loan became due and neither the borrower nor the guarantors paid back the loan.  See Pl. 56.1 ¶¶ 20-21; Wheeler Decl. Exs. A-9, A-10.  After two notices to the borrower and the guarantors, the plaintiff and the borrower entered into the first

amendment to the loan agreement, converting the revolving credit line into an LOC loan and reinstating the term loan in exchange for an additional security agreement from Greuner Medical of NJ PC on October 28, 2020.  See Pl. 56.1 ¶ 22; Wheeler Decl. Exs. A-4, A-11.

Just under four months later, on February 23, 2021, plaintiff and the borrower entered into another amendment to the loan agreement whereby the borrower agreed to have defaulted in complying with the Basic Fixed Charge Coverage ratio and the loan expiration date was extended.  See Pl. 56.1 ¶ 23; Wheeler Decl. Ex. A-12.  In exchange, the bank received a security agreement and guaranty from the Center for Special Surgery of Essex County LLC. See Pl. 56.1 ¶ 23; Wheeler Decl. Ex. A-7.  Thereafter, the expiration date was extended four times, twice unilaterally by plaintiff and twice by agreement with the borrower.  See Pl. 56.1 ¶¶ 24-27; Wheeler Decl. Exs. A-13, A-14, A-15, A-16.

The last extension was granted on March 14, 2022 and extended the expiration date to June 30, 2022.  See Pl. 56.1 ¶ 27; Wheeler Decl. Ex. A-16.  On September 16, 2022, plaintiff notified the borrower and the guarantors that the loan had matured, the loan had not been repaid in full, and there was now a default on the term loan.  See Pl. 56.1 ¶¶ 28-30; Wheeler Decl. Ex. A-17.  The bank demanded payment of both the LOC and the term loan.  See Pl. 56.1 ¶ 30.  On October 25, 2022, defendants were evicted from their

operating facility in Roseland, New Jersey. <u>See</u> Greuner Decl. at 6-7. On October 27, 2022, plaintiff again demanded payment of the loans or, alternatively, to obtain the collateral. <u>See</u> Pl. 56.1 ¶ 31; Wheeler Decl. Ex. A-18. Shortly thereafter, plaintiff filed this lawsuit.

Plaintiff alleges that there has been neither any repayment of the loan, except for a principal credit reduction on November 14, 2022, nor has the collateral been provided pursuant to the security agreements. <u>See</u> Pl. 56.1 ¶¶ 32, 42. In addition, plaintiff alleges that defendants owe the principal balance of the revolving credit facility of $7,309,951.91, the principal balance on the term loan of $660,242.59, unpaid contract rate interest of $363,907.90 and accrued but unpaid deferred interest of $46,996.14 on the LOC loan, unpaid contract rate interest of $16,393.81 and accrued but unpaid deferred interest of $8,609.94 on the term loan, term loan late charges of $3,855.90, a UCC termination fee of $85.00, and contractual interest of $1,542.40 for each day from April 18, 2023 until the entry of a judgment. <u>See</u> Pl. 56.1 ¶¶ 37-38; Giorgi Affidavit ¶¶ 7, 70. Plaintiff also requests post-judgment interest. <u>See</u> ECF No. 33 at 20.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

"The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment . . . and in assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (internal citations and quotations omitted). Accordingly, "the moving party must make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

"The party opposing summary judgment may defeat the motion only by asserting defenses that raise genuine issues of material fact." Id. at *4 (internal citations and quotation marks omitted). "Conclusory allegations will not suffice to create a genuine issue." Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990).  There must be more than a "scintilla of

11

evidence in support of the [non-movant's] position; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.  In other words, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If no rational fact finder could find in the non-movant's favor, there is no genuine issue of material fact, and summary judgment is appropriate." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d. Cir. 1991).

## DISCUSSION

Plaintiff brings two claims for breach of contract related to the LOC loan and the term loan against the borrower, four claims for breach of guaranty against the four guarantors, and one claim for foreclosure of security interests.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, granting district courts original jurisdiction over cases between citizens of different states in which the amount in controversy exceeds $75,000.[6]  The Court applies New York law to this dispute because every agreement between the parties is governed by New York law

---

[6] Here, plaintiff is a citizen of North Carolina for the purposes of diversity jurisdiction. See Comp. ¶ 1. Defendants Greuner Medical P.C., DGAT Management Limited LLC, Center for Special Surgery of Essex County, LLC, and David A. Greuner are citizens of New York and Greuner Medical of NJ PC is a citizen of both New York and New Jersey. See ECF Nos. 24, 27.

12

and the parties do not dispute its application.  See Wheeler Decl. Exs. A-1, A-2, A-3, A-4, A-5, A-6, and A-7.

**A. Breach of Contract and Breach of Guaranties**

Under New York law, a breach of contract occurs where there is: (1) a contract; (2) performance by one party; (3) breach by the other party; and (4) damages.  See Bank of Am., N.A. v. Ave. Imaging LLC, No. 21 Civ. 5201 (VB), 2023 WL 3818549, at *6 (S.D.N.Y. June 5, 2023) (citing Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011)).  Furthermore, in cases involving notes and guaranties, an "obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and defendant's failure to pay." Wm. V. Schmidt Co., 2011 WL 1334844, at *4.  The "party opposing summary judgment may defeat the motion only be asserting defenses that raise genuine issues of material fact."  Id.  In addition, "[a] familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."  W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, (1990).

Here, plaintiff entered into the loan agreement with the borrower on August 26, 2019.  See Pl. 56.1 ¶ 1.  Plaintiff and the borrower agreed to amend the loan agreement four times over the course of their relationship.  See Pl. 56.1 ¶¶ 22-23, 25, 27.  The

guarantors also signed Continuing and Unconditional Guaranties. See Pl. 56.1 ¶¶ 13-14. Plaintiff has performed its obligations under the contract while the borrower and the guarantors have not paid back the loan. See Pl. 56.1 ¶¶ 32, 34. As a result, the bank has accrued damages, which include the unpaid principal on both loans, accrued and interest, and late charges.[7] See Pl. 56.1 ¶¶ 36-38. Accordingly, plaintiff has made its prima facie case for both breach of contract and breach of the guaranties.

Defendants have not met their burden to show that there is a genuine dispute of material fact. Defendants cite no case law in their opposition brief beyond setting forth the summary judgment standard and reference the declaration of Dr. David A. Greuner, which provides only vague objections to plaintiff's statements without any support from the record. See generally Greuner Decl. Indeed, the Greuner Declaration is wholly inadequate because it does not assert any material fact and fails to provide even one dollar figure or point to a line item in plaintiff's loan histories to support its cursory assertions that plaintiff seeks excessive costs, fees, and penalties, misapplied payments, improperly credited payments, and had defective default notices, see ECF No. 40 at 5-6. Federal Rule of Civil Procedure 56(c)(1)(A) requires

---

[7] The Court notes that plaintiff has adequately supported its damages calculation with documentation in the form of the Giorgi Affidavit and the Bank of America business records attached thereto. As discussed below, defendants have not meaningfully pointed to any information in the record disputing, with specificity, the accuracy of these records.

that a party seeking to show that a fact is genuinely disputed must "cite[] to particular parts of materials in the record."  F. R. Civ. P. 56(c)(1)(a).  Defendants cannot simply speculate about deficiencies in plaintiff's loan histories and default notices. See Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010); see also Bank of Am., N.A. v. Phone Traders, Inc., No. 17 Civ. 1358 (ENV)(AKT), 2019 WL 13236151, at *4 (E.D.N.Y. Aug. 21, 2019) (finding defendants' affirmative defenses that were unsupported with facts meritless).  Accordingly, plaintiff's motion for summary judgment on its breach of contract claims for both the LOC loan and the term loan are granted.

Defendants have not raised any arguments or defenses specifically related to the guaranty agreements.  Furthermore, these guaranties are Continuing and Unconditional Guaranties that state that "[i]t is the express intent of Guarantor that Guarantor's obligations under this Guaranty are and shall be absolute and unconditional.  This is a guaranty of payment and not merely a guaranty of collection. . . ."  Wheeler Decl. Exs. A-6 at § 4; A-7 at § 4 (emphasis added).  Thus, under New York law, most defenses would be barred.  See CIT Grp./Com. Servs., Inc. v. Prisco, 640 F. Supp. 2d 401, 410 (S.D.N.Y. 2009) (noting that under New York law, "the only affirmative defenses that are not waived by an absolute and unconditional Guaranty are payment and lack of consideration for the Guaranty.").  Accordingly, plaintiff's

15

motion for summary judgment as to its breach of guaranty claims is also granted.

## B. Foreclosure of Security Interests

Under New York law, when a borrower defaults on a security agreement, the secured party may foreclose on its security interest and take possession of the collateral with or without judicial process and dispose of the collateral. N.Y.U.C.C. § 9-601(a), 9-609(a)(1), (b)(1)-(2). A plaintiff must show that "the parties entered into a security agreement and that the defendant[s] defaulted on [their] obligations" to warrant granting a motion for summary judgment on a claim of foreclosure of security interests. Ave. Imaging LLC, 2023 WL 3818549, at *6.

Here, each defendant except for Dr. Greuner has signed security agreements securing the borrower's loan agreement with enumerated collateral property. Wheeler Decl. Exs. A-2, A-3, A-4, and A-5. Furthermore, plaintiff has submitted the UCC-1 financing statements to the Secretaries of State for New York and New Jersey, respectively, providing notice that the collateral is subject to the security agreements. See Wheeler Decl. Ex. A-19. The financing statements show that Bank of America filed the UCC-1 Financing Statements shortly after the security agreements were executed and expressly included the very same property that was included in the security agreements. See id. As discussed above, this Court has found that the borrower and the guarantors have not

16

paid back the loan.  Accordingly, plaintiff has made its prima facie case entitling it to take possession of the collateral.  See Ave. Imaging LLC, 2023 WL 3818549, at *7 (granting summary judgment on a claim for foreclosure of a security interest where the plaintiff showed that there was a security agreement, UCC-1 financing statement, and evidence of the borrower's default).

Defendants' arguments against plaintiff's foreclosure claim are unavailing.  Defendants allege that they were evicted from their facility in Roseland, New Jersey on October 25, 2022, thus they are no longer in possession of the collateral.  See Greuner Decl. at 6-7.  They also claim that requests for concessions or further debt reduction or allocations have been met with threats of further litigation from plaintiff.  See id. at 8.  Plaintiff does not dispute that the defendants were evicted from their Roseland, New Jersey facility, but argues that the collateral can be sold with defendants' consent and points to the existence of additional collateral in the form of equipment held by the borrower in New York.  See ECF No. 42 at 9-10.

Defendants' argument that they no longer have access to their Roseland, New Jersey facilities is of no consequence.  Given that the plaintiff's UCC financing statements and the security agreements list the collateral as "all equipment and fixtures now owned or hereafter acquired by the debtor" and "all accounts" for the borrower, DGAT, Greuner Medical of NJ, and Center for Special

17

Surgery of Essex County LLC, defendants' argument does not provide a genuine dispute of material fact that would defeat plaintiff's motion to possess the collateral.  Accordingly, summary judgment on the foreclosure claim is also granted.[8]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment as to claims one, two, three, seven, eight, nine, and ten is granted and its remaining claims are dismissed.  Accordingly, plaintiff is entitled to a judgment of $8,410,043.19, per diem interest of $1,542.40 since April 18, 2023 to today, and post-judgment interest.  The Clerk of the Court is respectfully instructed to terminate the motion pending at ECF No. 31, enter judgment for plaintiff, and close the case.

**SO ORDERED.**


Dated:      January 17, 2024
            New York, New York


                              _____
                              NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE

---

[8] The Court notes that plaintiff's additional claims for replevin, conversion, and unjust enrichment are duplicative.  See Bank of Am., N.A. v. City View Blinds of N.Y., Inc., No. 20 Civ. 9911 (SLC), 2022 WL 580764, at *6 (S.D.N.Y. Feb. 25, 2022)(internal citations and quotations omitted).  Accordingly, those claims are dismissed.  Furthermore, plaintiff's request to strike defendants' answer and affirmative defenses is denied as moot given that the Court has granted plaintiff's summary judgment motion and dismissed the remainder of plaintiff's claims as duplicative.  See id. at *8.